IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DANIEL PHILLIPS,

    Plaintiff,

vs.                                       Case No. 4:10cv259-RH/WCS

BP PLC, BP PRODUCTS NORTH
AMERICA, INC., BP AMERICA, INC.,
BP CORPORATION NORTH
AMERICA, INC.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

    Defendants filed a notice of removal on June 23, 2010. Doc. 1. On June 25, 2010, Defendants filed a consent motion for an extension of time to file an answer. Doc. 3. The *pro se* Plaintiff filed a motion to remand back to state court. Doc. 8. Defendants have filed a memorandum in response. Doc. 10.

    Plaintiff's complaint, as filed in state court, alleged negligence causing damages exceeding $15,000.00, but less than $75,000.00. Doc. 1-1. Plaintiff is a Florida resident who owns property in Panama City Beach, Florida. *Id.* Plaintiff claims the Defendants were negligent in the operation of an oil rig in the Gulf of Mexico, resulting

in an oil leak that damaged Plaintiff's interest in real property. *Id.* The only allegation of harm is that "Plaintiff's damages include, but are not limited to, loss of value in Plaintiff's real property." *Id.*

Defendants assert that removal was appropriate under the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.* Doc. 1, p. 3. Defendants point out that 43 U.S.C. § 1349(b)(1) grants jurisdiction to district courts "of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." *Id.* Defendants contend that jurisdiction exists in a federal district court because this case arises out of, and is connected to, a drilling operation which was conducted on the outer Continental Shelf.

Plaintiff asserts in the motion to remand that jurisdiction under the OCSLA "depends on where the injury occurs, not where the negligent acts take place." Doc. 8, p. 1. Plaintiff contends his injury is on land, i.e., "diminution in property value and lost rents," and he was not injured "on the Outer Continental Shelf." *Id.* Plaintiff cites Landry v. Island Operating Company, 2009 WL 3241560, 1 (W.D. La., 2009), for the proposition that this court's subject matter jurisdiction "depends on the location of the injury (the 'situs'), not where the negligent act(s) take place." Doc. 8, pp. 2-3.

In Landry v. Island Operating Co. Inc., 2009 WL 3241560, 1 (W.D. La., 2009), the plaintiff brought suit to recover for injuries he suffered while working as a "self-employed independent contractor" and "welding a tanker owned by Exterran Energy Solutions LP ('Exterran')." 2009 WL 3241560, at *1. The tanker was in port at the time but the theory

of liability was that it had not been properly cleaned while at an offshore oil rig. Plaintiffs' negligence action was filed in state court, but Defendants removed the case to federal court, asserting "the complaint was encompassed by the Outer Continental Shelf Lands Act." *Id.*

The district court in <u>Landry</u> first thought that the statutory language of 28 U.S.C. § 1333(a)(1) "appears to implement specific geographic limitations on OCSLA's applicability." 43 U.S.C. § 1333(a)(1) provides:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: *Provided, however,* That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

43 U.S.C. § 1333(a)(1). But the court also noted § 1349(b)(1), which seemed to the court to grant broader jurisdiction unconnected to a geographical location:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the materials, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

43 U.S.C. § 1349(b)(1), *quoted in* <u>Landry</u>, 2009 WL 3241560, at *2. The court spent the rest of the opinion resolving this perceived tension between § 1333(a)(1) and § 1349(b).

First, addressing § 1331(a)(1), the court noted that the Supreme Court had found that "the purpose of [OCSLA] was to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the Outer Continental Shelf." 2009 WL

3241560, at *2, *quoting* Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969). The court further noted that the Supreme Court had said in Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 219, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) that "Congress determined that the general scope of OCSLA's coverage . . . would be determined principally by locale, not by the status of the individual injured or killed." The court then cited Demette v. Falcon Drilling Co., Inc., 280 F.3d 492, 496 (5th Cir. 2002), finding that the Fifth Circuit "parsed the statutory language of § 1331(a) to determine the precise situses where the OCSLA could possibly apply." *Id.* One situs listed in § 1333 was an artificial installation attached to the seabed to explore for and develop mineral resources. *Id.*, at *3. The court reasoned:

> The platform where the allegedly negligent acts occurred undoubtedly falls within the second category, as it is an artificial installation permanently attached to and erected on the seabed of the OCS with the purpose of resource exploration, development, and production. In contrast, the land-based location where the alleged accident occurred does not fall within any of the three situs categories.

*Id.* The court then concluded: "The Fifth Circuit has conclusively stated the 'situs' required to trigger OCSLA refers to the location of the injury." 2009 WL 3241560, at * 3, *citing to* Golden v. Omni Energy Services Corp., 242 Fed. Appx. 965, 967 (5th Cir. 2007); Demette v. Falcon Drilling Co., Inc., 280 F.3d 492, 496 (5th Cir. 2002); Mills v. Director, Office of Workers' Comp. Programs, U.S. Dept. of Labor, 877 F.2d 356 (5th Cir. 1989). The court rejected the defendants' suggestion that the negligence "action arose, not at the point of explosion on land (i.e. the injury), but at the point of their allegedly negligent act of allowing flammable substances to enter into or remain within

the tank without plaintiff's knowledge (i.e. the breach of duty)." 2009 WL 3241560, at * 3.

The court then assumed, *arguendo*, that the situs of the injury was not dispositive of the question of the district court's subject matter jurisdiction, "but yields to the catch-all jurisdictional grant of § 1349."[1] *Id.*, at *4. The court turned to <u>Tennessee Gas Pipeline v. Houston Cas. Ins. Co.</u>, 87 F.3d 150 (5th Cir. 1996). In that case, the Fifth Circuit applied a "but-for" test to determine whether an injury arose from or occurred in connection with an OCS operation to explore, develop, remove, or transport natural resources from the OCS, as provided in § 1349. The court in <u>Landry</u> then applied the "but for" test to the facts before it:

> Plaintiff's injury in this case does not satisfy the "but-for" test as articulated in *Tennessee Gas*. Plaintiff allegedly sustained injuries while welding a landed tanker containing flammable material. Both the tanker's explosion and the fact that it contained allegedly flammable materials were not existent solely because they came from a platform on the OCS. The tanker could just as easily have come from a nonOCS platform which would not be subject to OCSLA. Moreover, the location of the platform in the OCS did not change any material facts. If the platform that sent the tanker back to land would have been located within Louisiana's territorial waters, in foreign waters, or on land, the injury would have presumably happened in the same manner. The mere fact that the tanker involved in this incident had been in use on the OCS does not confer federal question jurisdiction.

2009 WL 3241560, at * 4. The court also concluded the manner in which that plaintiff "allegedly sustained injury simply bears too indirect and attenuated a relationship to any 'operation' on the OCS for defendants to be allowed to invoke OCSLA." 2009 WL 3241560, at * 3. Presumably, this direct versus indirect analysis was another way of

---

[1] Thus, <u>Landry</u> stands for exactly what Plaintiff says: it adopts a "situs of the injury" test for determining a district court's subject matter jurisdiction, and the "but for" analysis pursuant to § 1349 was *dicta*.

applying the "but for" test. In concluding its opinion, the court instructed that when deciding a case where causation and proximity are of paramount importance to jurisdiction, courts should ask: "Would the injury have otherwise occurred but for the extractive operations on the shelf and the relationship of the injured's employment to the OCS activity?" 2009 WL 3241560, at * 5.

If this court need only apply § 1349(b)(1), the answer is plain. But for the explosion on Defendants outer continental shelf rig, which was actively trying to develop an oil well when the explosion occurred, Plaintiff would have no injury. Subject matter jurisdiction is in this court pursuant to § 1349(b)(1) and the motion to remand should be denied.

The "situs" analysis in <u>Landry</u> arising from the wording of § 1333(a)(1) is immaterial to the issue of whether this district court has subject matter jurisdiction. In the enactment of § 1333(a)(1), Congress established substantive law for outer continental shelf oil rigs and related activity, claiming those places as within the exclusive federal jurisdiction of the United States. Selection of substantive law for a federal enclave is distinct legislative act from conferring district court subject matter jurisdiction.

This can be seen by a review of the cases cited in <u>Landry</u>. <u>Rodrigue v. Aetna Casualty & Surety Co.</u>, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) only concerned whether Plaintiff's remedy (selection of substantive law) was under the Death on the High Seas Act, or whether that substantive law was supplemented by Louisiana law. 395 U.S. at 352, 89 S.Ct. at 1836. The Court held that the OCSLA "makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to

these artificial islands as though they were federal enclaves in an upland State." 395 U.S. at 355, 89 S.Ct. at 1837. The case did not involve district court subject matter jurisdiction.

Likewise, Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 209, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) did not involve the district court's subject matter jurisdiction under the OCSLA. In that case, two oil rig workers were killed in a helicopter taking them from the platform to the shore. 477 U.S. at 210, 106 S.Ct. at 2487. The issue was one of substantive law, whether the Death on the High Seas Act was the sole remedy, or whether Louisiana wrongful death law also applied. *Id.* In the course of that substantive law discussion, the Court said:

> Within the area covered by OCSLA, federal law controls but the law of the adjacent State is adopted as surrogate federal law to the extent that it is not inconsistent with applicable federal laws or regulations. § 1333(a)(2)(A).
>
> The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and not as vessels, *for purposes of defining the applicable law* because maritime law was deemed inapposite to these fixed structures.

477 U.S. at 217, 106 S.Ct. at 2491 (emphasis added). The court concluded:

> We do not interpret § 4 of OCSLA, 43 U.S.C. § 1333, to require or permit us to extend the coverage of the statute to the platform workers in this case who were killed miles away from the platform and on the high seas simply because they were platform workers. Congress determined that the general scope of OCSLA's coverage, like the operation of DOHSA's remedies, would be determined principally by locale, not by the status of the individual injured or killed. See 43 U.S.C. § 1333(a)(2)(A) ("To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations . . . , the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon"); 46 U.S.C. § 761 (DOHSA's coverage extends to the death of any "person . . .

> caused by wrongful act, neglect, or default occurring on the high seas beyond a maritime league from the shore of any State. . ."). Cf. *Herb's Welding, Inc. v. Gray, supra*[2] (discussing status and situs requirements of the Longshoremen's and Harbor Workers' Compensation Act as applied to platform workers making claims against their employers); *Director, Office of Workers' Compensation Programs v. Perini North River Associates*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983); 46 U.S.C. § 688 (recovery under Jones Act confined to "seaman"). Because the fatalities underlying this suit did not arise from an accident in the area covered by OCSLA but rather occurred on the high seas, DOHSA plainly was intended to control.

477 U.S. at 219-220, 106 S.Ct. at 2492-2493 (footnote omitted). In other words, the Court was concerned solely with the law applicable to the claims. To that extent, the case stands for the not surprising result that because the events giving rise to Plaintiff's claims in the case at bar happened in a locale plainly covered by the OCSLA, on an oil rig on the outer continental shelf, then the OCSLA will determine the substantive law to be applied in the case at bar.

To like effect is Demette v. Falcon Drilling Co., Inc., 280 F.3d 492 (5th Cir. 2002), and Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778 (5th Cir. 2009), overruling Demette. Those cases involve selection of the proper substantive law to govern the claims. The cases do not involve the subject matter jurisdiction of the district courts pursuant to § 1349(b)(1).

Tennessee Gas Pipeline, on the other hand, did concern whether the district court had subject matter jurisdiction. In that case, a barge negligently collided with an oil rig on the outer continental shelf. 87 F.3d at 152. After pointing out that the OCSLA establishes the law to be applied, the court said: "OCSLA not only defines the law

---

[2] Herb's Welding, Inc. v. Gray, 470 U.S. 414, 422, 105 S.Ct. 1421, 1426, 84 L.Ed.2d 406 (1985).

applicable to the OCS, *but also grants federal courts jurisdiction over disputes occurring there.* The jurisdictional grant, contained in 43 U.S.C. § 1349(b)(1), is very broad." *Id.*, at 154 (emphasis added). The court noted that "operation" as used in § 1349(b)(1) certainly included a platform affixed to the seabed used to extract minerals. *Id.* The court then said that the phrase "arise out of, or in connection with" in § 1349(b)(1) requires use of a "but for" test. *Id.*

> Use of the but-for test implies a broad jurisdictional grant under § 1349, but we have concluded that " 'a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty' " over the OCS.

*Id.* (citation omitted). The court then said:

> In our case it is clear there would have been no accident but for Tennessee Gas's operation on the OCS. Tennessee Gas argues that the dispute "arose out of" a navigational error, and not an operation on the OCS. But there would have been no navigational error but for the existence of the platform and Tennessee Gas's extractive activities. Tennessee Gas also argues that the platform itself did nothing to cause the accident, so that the controversy is not connected with any physical act constituting an operation. This contention is meritless. The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS. Jurisdiction therefore exists under OCSLA.

*Id.* Applying that case here, subject matter jurisdiction under § 1349(b)(1) exists because, but for the explosion on Defendants' oil rig, Plaintiff would have no claim at all.

Which brings us to Golden v. Omni Energy Services Corp., 242 Fed. Appx. 965, 967 (5th Cir. 2007) No. 07-30057) (not selected for publication), cited by Plaintiff. Doc. 8, p. 3. The case involved another helicopter crash. 242 Fed. Appx. At 966. It is unclear to what extent the operation of the helicopter arose "out of, or in connection with" the operation of an outer continental shelf oil rig. The court said:

> OCSLA merely establishes jurisdiction while conferring no substantive rights. In *Offshore Logistics, Inc. v. Tallentire*, the Supreme Court held that OCSLA does not "require or permit [courts] to extend the coverage of the statute to platform workers" injured "miles away from the platform and on the high seas" based solely on their occupational status. 477 U.S. 207, 219, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). The scope of OCSLA's coverage must be "determined principally by locale." *Id.* In line with the Court's interpretation of OCSLA, the Fifth Circuit in *Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc.*, set forth three conditions for employing OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law." 448 F.3d 760, 774 (5th Cir.2006). For OCSLA jurisdictional purposes, both cases compel the district court to take into account the location of incidents giving rise to the lawsuit. Here, the undisputed facts show that the helicopter accident giving rise to Golden's lawsuit did not occur on the Continental Shelf. The helicopter crash instead occurred in a field near Mouton Cove, Louisiana. Therefore, the district court cannot exercise jurisdiction over instant lawsuit under OCSLA.

242 Fed. Appx. At 967-968.

Golden is probably wrongly decided as it conflates the substantive law issue of § 1331(1) with the subject matter jurisdictional issue of § 1349(b)(1). The three part test quoted above originally came from Union Texas Petroleum Corp. v. PLT Engineering, Inc., 895 F.2d 1043 (5th Cir. 1990), *cert. denied*, 498 U.S. 848 (1990). The context of the formulation of that three part test was selection of substantive law, not subject matter jurisdiction:

> *Rodrigue* made clear that "for federal law to oust adopted state law, federal law must first apply." 395 U.S. at 359, 89 S.Ct. at 1839, 23 L.Ed.2d at 366. *But for adjacent state law to apply* as surrogate federal law under OCSLA, three conditions are significant. (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artific[i]al structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

895 F.2d at 1047 (emphasis added). But even if rightly decided, <u>Golden</u> supports subject matter jurisdiction in this case. The "location of the incidents giving rise to the lawsuit" in the case at bar plainly occurred when the oil rig exploded, an oil rig that was a site covered by the OCSLA. This court has subject jurisdiction pursuant to 43 U.S.C. § 1349(b)(1).

Accordingly, it is **RECOMMENDED** that Plaintiff's motion to remand to state court, doc. 8, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on July 30, 2010.

        s/ William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**